**MORTGAGE**

THIS MORTGAGE made on this day 07 of February , 2006 ,between Jiangyu Zhu and Kayoko Kimbara (hereinafter "Mortgagors")of 3303 Caminito Eastbluff, Unit 176, La Jolla, CA and the Clerk of the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, Massachusetts, (hereinafter "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond dated of even date for Jiangyu Zhu (hereinafter "Defendant") in Criminal No. 05-10153, in the amount of One hundred thousand dollars ($100,000) executed by the Defendant and the Mortgagor in favor of the United States of America and the due observance and performance of the obligation, terms and conditions as set forth in an Order Setting Conditions of Release ("Release Order") dated June 27, 2002, and as modified on July 12, 2005 and October 14, 2005 and filed with the United States District Court for the District of Massachusetts in Criminal No.05-10153, and to further secure the performance of all other covenants and agreements of or by the Defendant and Mortgagor herein, for the benefit of the Mortgagee, which may now exist or may hereafter exist or accrue while this Mortgage is still undischarged of record, and in furtherance of and pursuant to an Escrow Agreement made this day between the Mortgagor, and the United States Attorney for the District of Massachusetts, and the Mortgagee, the Mortgagor hereby mortgages to the Mortgagee, with power of sale, the following parcel of real property, the following covenants thereon, situated, lying and being in the County of San Diego, state of California, and more particularly described in the following deed:

A deed from Monica Strauss Spilker, as trustee of Monica Spilker Separate Property Trust, to Jiangyu Zhu and Kayoko Kimbara, dated November 16, 2004 and recorded on December 14, 2004 in the San Diego County Recorder's Office, Document #2004-1175933.

TOGETHER with all the improvements now or hereafter erected on the property, with all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property are hereinafter referred to as the "Property."

THE MORTGAGORS covenant with the Mortgagee as follows:
1. That the Mortgagors shall pay the indebtedness as hereinbefore provided.

2. That the Mortgagors will keep the Property insured against loss by fire or hazards included with the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagors will assign and deliver the policies to the Mortgagee; and that the Mortgagors will reimburse the said Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagors' default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the premises.

3. That the Mortgagors shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4. That the Mortgagors will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagors.

5. That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or

-1-

for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagors, or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6. That notice and demand or request may be made in writing and may be served in person or by mail.

7. That the Mortgagors will warrant and defend the title to the Property against all claims and demands.

8. That the Mortgagors will create no further encumbrances of any kind against the premises above-described.

9. That the Mortgagors, in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagor to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10. That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11. Notwithstanding any other agreement between the Mortgagor and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this mortgage has been duly executed by the Mortgagors.

_____          _____
Jiangyu Zhu                         Kayoko Kimbara

**STATE OF CALIFORNIA**
**CITY OF SAN DIEGO**

ON February 7, 2006 BEFORE me ___Jae Yong Lee___ (a Notary Public in and for said County and State)

personally appeared ___Jiangyu Zhu and Kayoko Kimbara___,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL
JAE YONG LEE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1510564
SAN DIEGO COUNTY
MY COMM. EXP. AUG 29, 2008

(This area for official notary seal)

## **MORTGAGE**

THIS MORTGAGE made on this day 07 of February , 2006 ,between Jiangyu Zhu and Kayoko Kimbara (hereinafter "Mortgagors")of 3303 Caminito Eastbluff, Unit 176, La Jolla, CA and the Clerk of the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, Massachusetts, (hereinafter "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond dated of even date for Kayoko Kimbara (hereinafter "Defendant") in Criminal No. 05-10153, in the amount of One hundred thousand dollars ($100,000) executed by the Defendant and the Mortgagor in favor of the United States of America and the due observance and performance of the obligation, terms and conditions as set forth in an Order Setting Conditions of Release ("Release Order") dated June 27, 2002, and as modified on July 12, 2005 and October 14, 2005 and filed with the United States District Court for the District of Massachusetts in Criminal No.05-10153, and to further secure the performance of all other covenants and agreements of or by the Defendant and Mortgagor herein, for the benefit of the Mortgagee, which may now exist or may hereafter exist or accrue while this Mortgage is still undischarged of record, and in furtherance of and pursuant to an Escrow Agreement made this day between the Mortgagor, and the United States Attorney for the District of Massachusetts, and the Mortgagee, the Mortgagor hereby mortgages to the Mortgagee, with power of sale, the following parcel of real property, the following covenants thereon, situated, lying and being in the County of San Diego, state of California, and more particularly described in the following deed:

A deed from Monica Strauss Spilker, as trustee of Monica Spilker Separate Property Trust, to Jiangyu Zhu and Kayoko Kimbara, dated November 16, 2004 and recorded on December 14, 2004 in the San Diego County Recorder's Office, Document #2004-1175933.

TOGETHER with all the improvements now or hereafter erected on the property, with all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property are hereinafter referred to as the "Property."

THE MORTGAGORS covenant with the Mortgagee as follows:
1. That the Mortgagors shall pay the indebtedness as hereinbefore provided.

2. That the Mortgagors will keep the Property insured against loss by fire or hazards included with the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagors will assign and deliver the policies to the Mortgagee; and that the Mortgagors will reimburse the said Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagors' default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the premises.

3. That the Mortgagors shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4. That the Mortgagors will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagors.

5. That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagors, or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6. That notice and demand or request may be made in writing and may be served in person or by mail.

7. That the Mortgagors will warrant and defend the title to the Property against all claims and demands.

8. That the Mortgagors will create no further encumbrances of any kind against the premises above-described.

9. That the Mortgagors, in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagor to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10. That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11. Notwithstanding any other agreement between the Mortgagor and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this mortgage has been duly executed by the Mortgagors.

Jiangyn Zhu                                   Kayoko Kimbara

---

**STATE OF CALIFORNIA**
**CITY OF SAN DIEGO**

ON February 7, 2006 BEFORE me Jae Yong Lee _____ (a Notary Public in and for said County and State)

personally appeared Jiangyu Zhu and Knyoleo Kimbara _____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL
JAE YONG LEE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1510564
SAN DIEGO COUNTY
MY COMM. EXP. AUG. 29, 2008

(This area for official notary seal)

-2-

## **ESCROW AGREEMENT**

ESCROW AGREEMENT, entered into this day 07 of February, 2006, among Jiangyu Zhu and Kayoko Kimbara (the "Sureties"), and Michael J. Sullivan in his official capacity (the "United States Attorney"), and Sarah Thornton, in her official capacity as Clerk of the United States District Court, (the "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of Kayoko Kimbara (the "Defendant") on the terms and conditions set forth in an Order Setting Conditions of Release (the "Release Order"), as amended by the Honorable Robert B. Collings, United States Magistrate-Judge.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1. The Sureties shall (1) execute a Quitclaim Deed to the Real Estate located at 3303 Caminito Eastbluff, Unit 176, La Jolla, CA in favor of the United States of America and (2) deliver same to the Escrow Agent to be held in escrow pursuant to the terms of this Agreement.

2. The Sureties further agrees to execute any additional documents and take any action necessary to effectuate the transfer of the Real Estate and facilitate the sale of such property upon order of the Court in the event that the Defendant is found to be in default of the terms and conditions of the Release Order.

3. The Escrow Agent shall hold the deed in escrow under the following terms and conditions:

A. In the event the Defendant fails to appear as required at all proceedings in Criminal No.05-10153-GAO. If you are habed into Lynn, you will be arraigned and counsel will be appointed. It is unlikely that you will be able to resolve the case that day. Or otherwise violates any condition of bail, and Defendant is declared to be in default by a judicial officer of the United States District Court for the District of Massachusetts, then, upon order of the Court, and lieu of or in addition to foreclosure proceedings on any mortgage granted by the Surety, the Escrow Agent shall tender the Quitclaim Deed to the United States Attorney and he shall cause the same to be immediately recorded without notice to the Sureties. Any requirement that foreclosure proceedings be commenced upon any mortgage granted by the Sureties in connection with Criminal No. 05-10153-GAO is expressly waived by the Sureties.

B. This agreement shall terminate upon the final disposition of Criminal No. 05-10153-GAO and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, the Escrow Agent and upon order of the Court, shall deliver the Quitclaim Deed to the Surety.

4. The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

5. This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                           SURETIES:
SARAH THORNTON, Clerk
United States District Court

BY_____     _____
   Deputy Clerk                         JIANGYU ZHU


MICHAEL J. SULLIVAN,                     _____
UNITED STATES ATTORNEY                   KAYOKO KIMBARA

BY_____
   Assistant U.S. Attorney

---

**STATE OF CALIFORNIA**
**CITY OF SAN DIEGO**

ON Fubruary 7, 2006 BEFORE me   Jae Yang Lee_____ (a Notary Public in and for said County and State)

personally appeared   Jiangyu Zhu and Kayoko Kimbara_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____

OFFICIAL SEAL
JAE YONG LEE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1510564
SAN DIEGO COUNTY
MY COMM. EXP. AUG. 29, 2008

(This area for official notary seal)

## ESCROW AGREEMENT

ESCROW AGREEMENT, entered into this day 07 of February, 2006, among
Jiangyu Zhu and Kayoko Kimbara (the "Sureties"), and Michael J.
Sullivan in his official capacity (the "United States Attorney"), and
Sarah Thornton, in her official capacity as Clerk of the United States
District Court, (the "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of Jiangyu Zhu
(the "Defendant") on the terms and conditions set forth in an Order
Setting Conditions of Release (the "Release Order"), as amended by the
Honorable Robert B. Collings, United States Magistrate-Judge.

NOW THEREFORE, in consideration of the mutual covenants and agreements
contained herein, the parties hereto agree as follows:

1. The Sureties shall (1) execute a Quitclaim Deed to the Real Estate
located at 3303 Caminito Eastbluff, Unit 176, La Jolla, CA in favor of
the United States of America and (2) deliver same to the Escrow Agent
to be held in escrow pursuant to the terms of this Agreement.

2. The Sureties further agrees to execute any additional documents and
take any action necessary to effectuate the transfer of the Real
Estate and facilitate the sale of such property upon order of the
Court in the event that the Defendant is found to be in default of the
terms and conditions of the Release Order.

3. The Escrow Agent shall hold the deed in escrow under the following
terms and conditions:

   A. In the event the Defendant fails to appear as required at all
   proceedings in Criminal No.05-10153-GAO. If you are habed into Lynn,
   you will be arraigned and counsel will be appointed. It is unlikely
   that you will be able to resolve the case that day. Or otherwise
   violates any condition of bail, and Defendant is declared to be in
   default by a judicial officer of the United States District Court
   for the District of Massachusetts, then, upon order of the Court,
   and lieu of or in addition to foreclosure proceedings on any
   mortgage granted by the Surety, the Escrow Agent shall tender the
   Quitclaim Deed to the United States Attorney and he shall cause the
   same to be immediately recorded without notice to the Sureties. Any
   requirement that foreclosure proceedings be commenced upon any
   mortgage granted by the Sureties in connection with Criminal No. 05-
   10153-GAO is expressly waived by the Sureties.

   B. This agreement shall terminate upon the final disposition of
   Criminal No. 05-10153-GAO and written discharge of the bond provided
   to the Surety by the United States of America. Upon such termination,
   the Escrow Agent and upon order of the Court, shall deliver the
   Quitclaim Deed to the Surety.

4. The validity and construction of this Agreement shall be governed
by the law of the Commonwealth of Massachusetts.

5. This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETIES:
SARAH THORNTON, Clerk
United States District Court

BY_____       _____
  Deputy Clerk                          JIANGYU ZHU


MICHAEL J. SULLIVAN,                    _____
UNITED STATES ATTORNEY
                                        KAYOKO KIMBARA
BY_____
  Assistant U.S. Attorney

---

**STATE OF CALIFORNIA**
**CITY OF SAN DIEGO**

ON February 7, 2006 BEFORE me____Jae Yong Lee____(a Notary Public in and for said County and State)

personally appeared____Jiangyu Zhu and Kayoko Kimbara_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____

OFFICIAL SEAL
JAE YONG LEE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1510564
SAN DIEGO COUNTY
MY COMM. EXP. AUG 29, 2008

(This area for official notary seal)

-2-

| RECORDING REQUESTED BY: | |
| --- | --- |
| **ORDER NO.:** <br> **ESCROW NO.:** | · |
| **AND WHEN RECORDED MAIL TO:** <br> Name <br> Address <br> City, State Zip | |

**A.P.N.**                                                              (SPACE ABOVE THIS LINE IS FOR RECORDER'S USE)

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $ <u>577.50</u> (County) $ _____ (City)

☒ computed on full value of property conveyed, or

☐ computed on full value less liens or encumbrances remaining at time of sale

☒ unincorporated area                          ☒ City of <u>San Diego(Area of La Jolla</u> AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

<u>Jiangyu Zhu and Kayoko Kimbara, husband and wife as joint tenants</u>

hereby GRANT(S) to <u>The United States of America</u>

the following described real property in the City of _____, County of <u>San Diego</u>, State of <u>California</u>:

Please see Exhibit "A" hereto attached and made a part hereof

and commonly known as: _____

Dated: _____ 02/07/2006

_____            _____
JIANGYU ZHU                                                KAYOKO KIMBARA

STATE OF CALIFORNIA

COUNTY OF <u>SAN DIEGO</u>

ON <u>February 7, 2006</u> _____ BEFORE me <u>Jae Yong Lee, Notary Public</u> _____
personally appeared <u>Jiangyu Zhu and Kayoko Kimbara</u>
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL <br> JAE YONG LEE <br> NOTARY PUBLIC-CALIFORNIA <br> COMM. NO. 1510564 <br> SAN DIEGO COUNTY <br> MY COMM. EXP. AUG. 29, 2008 <br> (This area for official notary seal)

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

Grant Deed – Individual (290) 07-05

## EXHIBIT "A"

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT 176 OF EASTBLUFF PHASE IV, AS SET FORTH IN THAT CONDOMINIUM PLAN RACORDED MARCH 4, 1977 AS FILE NO. 77-080623 OF OFFICIAL RECORDS, AND DEFINED IN THAT DECLARATION OF RESTRICTIONS, RECORDED JULY 9, 1976 AS FILE NO. 76-216385 OF OFFICIAL RECORDS.

PARCEL 2:

AN UNDIVIDED 1/50[TH] INTEREST IN AND TO PARCEL 2 OF PARCEL MAP NO. 5576, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 17, 1977, BEING A PORTION OF LOT 3 OF LA JOLLA VILLAGE APARTMENTS UNIT NO. 2, ACCORDING TO MAP THEREOF NO. 7174, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 14, 1972.

# PRELIMINARY REPORT



# EQUITY TITLE COMPANY

**300 W. GRAND AVE.**
**ESCONDIDO, CA 92025**
**PHONE: (760) 738-0851**
**FAX: (760) 738-0852**

DATED AS OF NOVEMBER 22, 2005 AT 7:30 A.M.

**JONATHAN J. ZHU**
**3303 CAMINITO EASTBLUFF UNIT #176**
**LA JOLLA, CA 92037**

**YOUR NO. :3303 CAMINITO EASTBLUFF #176**

**ATTENTION: JONATHAN ZHU**

**ORDER NO.: SD0570915**

---

### "PRELIMINARY REPORT"

IN RESPONSE TO THE ABOVE REFERENCED APPLICATION FOR A POLICY OF TITLE INSURANCE, **EQUITY TITLE COMPANY** HEREBY REPORTS THAT IT IS PREPARED TO ISSUE, OR CAUSE TO BE ISSUED, AS OF THE DATE HEREOF, A POLICY OR POLICIES OF TITLE INSURANCE DESCRIBING THE LAND AND THE ESTATE OR INTEREST THEREIN HEREINAFTER SET FORTH, INSURING AGAINST LOSS WHICH MAY BE SUSTAINED BY REASON OF ANY DEFECT, LIEN OR ENCUMBRANCE NOT SHOWN OR REFERRED TO AS AN EXCEPTION BELOW OR NOT EXCLUDED FROM COVERAGE PURSUANT TO THE PRINTED SCHEDULES, CONDITIONS AND STIPULATIONS OF SAID POLICY FORMS.

THE PRINTED EXCEPTIONS AND EXCLUSIONS FROM THE COVERAGE OF SAID POLICY OR POLICIES ARE SET FORTH IN EXHIBIT A ATTACHED. COPIES OF THE POLICY FORMS SHOULD BE READ. THEY ARE AVAILABLE FROM THE OFFICE WHICH ISSUED THIS REPORT.

**PLEASE READ THE EXCEPTIONS SHOWN OR REFERRED TO BELOW AND THE EXCEPTIONS AND EXCLUSIONS SET FORTH IN EXHIBIT A OF THIS REPORT CAREFULLY. THE EXCEPTIONS AND EXCLUSIONS ARE MEANT TO PROVIDE YOU WITH NOTICE OF MATTERS WHICH ARE NOT COVERED UNDER THE TERMS OF THE TITLE INSURANCE POLICY AND SHOULD BE CAREFULLY CONSIDERED.**

**IT IS IMPORTANT TO NOTE THAT THIS PRELIMINARY REPORT IS NOT A WRITTEN REPRESENTATION AS TO THE CONDITION OF TITLE AND MAY NOT LIST ALL LIENS, DEFECTS AND ENCUMBRANCES AFFECTING TITLE TO THE LAND.**

THIS REPORT (AND ANY SUPPLEMENTS OR AMENDMENTS HERETO) IS ISSUED SOLELY FOR THE PURPOSE OF FACILITATING THE ISSUANCE OF A POLICY OF TITLE INSURANCE AND NO LIABILITY IS ASSUMED HEREBY. IF IT IS DESIRED THAT LIABILITY BE ASSUMED PRIOR TO THE ISSUANCE OF A POLICY OF TITLE INSURANCE, A BINDER OR COMMITMENT SHOULD BE REQUESTED.

THE FORM OF POLICY OF TITLE INSURANCE CONTEMPLATED BY THIS REPORT IS:

[X] CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY
[ ] AMERICAN LAND TITLE ASSOCIATION LOAN POLICY

NICK ASHCRAFT, TITLE OFFICER
(760) 738-0851

ORDER NO.: SD0570915

## SCHEDULE A

THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A CONDOMINIUM AS DEFINED IN SECTION 783 OF THE CALIFORNIA CIVIL CODE, IN FEE**

TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**JIANGYU ZHU AND KAYOKO KIMBARA, HUSBAND AND WIFE AS JOINT TENANTS**

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**SEE EXHIBIT "A" ATTACHED HERETO**

ORDER NO.:  SD0570915

## EXHIBIT "A"

**A CONDOMINIUM COMPRISED OF:**

**PARCEL 1:**

**UNIT 176 OF EASTBLUFF PHASE IV, AS SET FORTH IN THAT CONDOMINIUM PLAN RACORDED MARCH 4, 1977 AS FILE NO. 77-080623 OF OFFICIAL RECORDS, AND DEFINED IN THAT DECLARATION OF RESTRICTIONS, RECORDED JULY 9, 1976 AS FILE NO. 76-216385 OF OFFICIAL RECORDS.**

**PARCEL 2:**

**AN UNDIVIDED 1/50TH INTEREST IN AND TO PARCEL 2 OF PARCEL MAP NO. 5576, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 17, 1977, BEING A PORTION OF LOT 3 OF LA JOLLA VILLAGE APARTMENTS UNIT NO. 2, ACCORDING TO MAP THEREOF NO. 7174, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 14, 1972.**

## SCHEDULE B

**AT THE DATE HEREOF EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM DESIGNATED ON THE FACE PAGE OF THIS REPORT WOULD BE AS FOLLOWS:**

A.  GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2005-2006

| | | |
|---|---|---|
| TOTAL: | $5,808.80 | |
| FIRST INSTALLMENT: | $2,904.40 | OPEN |
| SECOND INSTALLMENT: | $2,904.40 | OPEN |

| | |
|---|---|
| ASSESSED VALUATION: | |
| LAND VALUE: | $400,000.00 |
| IMPROVEMENTS: | $125,000.00 |
| EXEMPTION: | $5,600.00 |

| | |
|---|---|
| CODE AREA: | 08118 |
| A. P. NO.: | 346-801-30-14 |

B.  THE LIEN OF SUPPLEMENTAL TAXES ASSESSED PURSUANT TO CHAPTER 3.5 COMMENCING WITH SECTION 75 OF THE CALIFORNIA REVENUE AND TAXATION CODE.

C.  ASSESSMENTS, IF ANY, FOR COMMUNITY FACILITY DISTRICTS AFFECTING SAID LAND WHICH MAY EXIST BY VIRTUE OF ASSESSMENT MAPS OR NOTICES FILED BY SAID DISTRICTS.

1.  THE TERMS AND PROVISIONS CONTAINED IN A DOCUMENT REGARDING HEIGHT LIMITATIONS, EXECUTED BY AND BETWEEN DONALD L. BREN COMPANY, A CALIFORNIA CORPORATION AND THE CITY OF SAN DIEGO, RECORDED DECEMBER 4, 1972 AS FILE NO. 323213 OF OFFICIAL RECORDS

2.  COVENANTS, CONDITIONS, RESTRICTIONS, EASEMENTS, ASSESSMENTS, LIENS, CHARGES, TERMS AND PROVISIONS, WHICH PROVIDE THAT A VIOLATION THEREOF SHALL NOT DEFEAT OR RENDER INVALID THE LIEN OF ANY FIRST MORTGAGE OR DEED OF TRUST MADE IN GOOD FAITH AND FOR VALUE, BUT DELETING ANY COVENANT, CONDITION OR RESTRICTION INDICATING A PREFERENCE, LIMITATION OR DISCRIMINATION BASED ON RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN, SEXUAL ORIENTATION, MARITAL STATUS, ANCESTRY, SOURCE OF INCOME OR DISABILITY, TO THE EXTENT SUCH COVENANTS, CONDITIONS OR RESTRICTIONS VIOLATE TITLE 42, SECTION 3604(C), OF THE UNITED STATES CODES OR SECTION 12955 OF THE CALIFORNIA GOVERNMENT CODE. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.

RECORDED:        JULY 9, 1976 AS FILE NO. 76-216385 OF OFFICIAL RECORDS

THE RIGHT TO LEVY CERTAIN CHARGES OR ASSESSMENTS AGAINST SAID LAND WHICH SHALL BECOME A LIEN IF NOT PAID, AS THEREIN SET FORTH.

A DOCUMENT ENTITLED "DECLARATION OF ANNEXATION", RECORDED MARCH 4, 1977 AS FILE NO. 77-80622 OF OFFICIAL RECORDS

3.  ANY EASEMENTS OR SERVITUDES APPEARING IN THE PUBLIC RECORDS.

ORDER NO.: SD0570915

AFFECTS:          COMMON AREA

4.  THIS COMPANY ASSUMES NO LIABILITY FOR THE DISCLOSURE OF SPECIFIC PARKING SPACES
    NOTED IN THE LEGAL DESCRIPTION HEREIN. NO DETERMINATION CAN BE MADE AS TO THE
    INDIVIDUALS ACTUALLY IN POSSESSION OF SAID PARKING SPACES.

    THE ASSIGNMENT/POSSESSION OF PARKING SPACES, TANDEM PARKING SPACES AND
    STORAGE SPACES ARE NOT DISCLOSED OF RECORD. PLEASE CONTACT HOMEOWNERS
    ASSOCIATION FOR INFORMATION ON THESE RESTRICTED COMMON AREAS.

5.  A DEED OF TRUST TO SECURE AN INDEBTEDNESS

    | | |
    |---|---|
    | AMOUNT: | $420,000.00 |
    | DATED: | DECEMBER 10, 2004 |
    | TRUSTOR: | JIANGYU ZHU AND KAYOKO KIMBARA |
    | TRUSTEE: | FIDELITY NATIONAL TITLE INSURANCE COMPANY |
    | BENEFICIARY: | WELLS FARGO BANK, N.A. |
    | RECORDED: | DECEMBER 14, 2004 AS INSTRUMENT NO. 2004-1175934, OFFICIAL RECORDS |

6.  A DEED OF TRUST TO SECURE AN INDEBTEDNESS

    | | |
    |---|---|
    | AMOUNT: | $52,500.00 |
    | DATED: | DECEMBER 10, 2004 |
    | TRUSTOR: | JIANGYU ZHU AND KAYOKO KIMBARA, HUSBAND AND WIFE |
    | TRUSTEE: | CHICAGO TITLE INSURANCE COMPANY |
    | BENEFICIARY: | WELLS FARGO BANK, N.A. |
    | RECORDED: | DECEMBER 14, 2004 AS INSTRUMENT NO. 2004-1175935 OF OFFICIAL RECORDS |

**IMPORTANT NOTICE:**

SAID DEED OF TRUST SECURES A REVOLVING LINE OF CREDIT AGREEMENT. THIS COMPANY
WILL REQUIRE WRITTEN CONFIRMATION FROM THE CURRENT BENEFICIARY THAT THE
ACCOUNT HAS BEEN **FROZEN AND CLOSED PRIOR TO RECORDING.** FAILURE OF THE
BENEFICIARY TO PROVIDE SUCH CONFIRMATION WILL RESULT IN EQUITY TITLE **HOLDING
FUNDS AT THE TIME OF CLOSING.**

7.  ANY FACTS ABOUT THE LAND THAT AN INSPECTION OR INQUIRY OF PARTIES IN POSSESSION
    SATISFACTORY TO THE COMPANY WOULD DISCLOSE AND THAT ARE NOT SHOWN BY THE
    PUBLIC RECORDS.

8.  STATEMENT OF INFORMATION FROM JIANGYU ZHU AND KAYOKO KIMBARA.

    **NOTE NO. 1:** THE CHARGE FOR A POLICY OF TITLE INSURANCE ISSUED THROUGH THIS TITLE
    ORDER WILL BE BASED ON THE SHORT-TERM RATE.

**NOTE NO. 2:** THIS REPORT IS PREPARATORY TO THE ISSUANCE OF AN ALTA LOAN POLICY. WE HAVE NO KNOWLEDGE OF ANY FACT WHICH WOULD PRECLUDE THE ISSUANCE OF THE POLICY WITH CLTA ENDORSEMENT FORMS 100 AND 116 ATTACHED.

WHEN ISSUED, THE CLTA ENDORSEMENT FORM 116 WILL REFERENCE **A CONDOMINIUM**

KNOWN AS:

**3303 CAMINITO EASTBLUFF #176 (AREA OF LA JOLLA), COUNTY OF SAN DIEGO, STATE OF CALIFORNIA**

**NOTE NO. 3:** ACCORDING TO THE PUBLIC RECORDS, THERE HAVE BEEN NO DEEDS CONVEYING THE LAND DESCRIBED HEREIN WITHIN A PERIOD OF 24 MONTHS PRIOR TO THE DATE OF THIS REPORT, EXCEPT AS FOLLOWS:

A DEED RECORDED DECEMBER 14, 2004 AS INSTRUMENT NO. 2004-1175933 OF OFFICIAL RECORDS

EXECUTED BY: MONICA STRAUSS SPILKER, AS TRUSTEE OF MONICA SPILKER SEPARATE PROPERTY TRUST DATED NOVEMBER 16, 1998 (WHO ACQUIRED TITLE AS MONICA SPILKER, AKA MONICA MARL STRAUSS SPILKER, AS TRUSTEE OF THE MONICA SPILKER SEPARATE PROPERTY TRUST DATED NOVEMBER 16, 1998)

TO: JIANGYU ZHU AND KAYOKO KIMBARA, HUSBAND AND WIFE AS JOINT TENANTS

**NOTE NO. 4:** IF THIS COMPANY IS REQUESTED TO DISBURSE FUNDS IN CONNECTION WITH THIS TRANSACTION, ASSEMBLY BILL 512 (CHAPTER 598, STATUTES OF 1989) MANDATES HOLD PERIODS FOR CHECKS DEPOSITED TO ESCROW OR SUB-ESCROW ACCOUNTS. THE MANDATORY HOLD PERIOD FOR CASHIER'S CHECKS, CERTIFIED CHECKS AND TELLER'S CHECKS IS ONE BUSINESS DAY. OTHER CHECKS REQUIRE A HOLD PERIOD FROM THREE TO SEVEN BUSINESS DAYS AFTER THE DAY DEPOSITED.

THE PERSONS WHO ARE PARTIES TO THE TRANSACTION TO WHICH THIS TITLE INSURANCE POLICY RELATES (THE "PRINCIPALS") EACH AGREE, UNDERSTAND AND ACKNOWLEDGE THAT EQUITY TITLE COMPANY ("EQUITY") IS ALSO ACTING AS AN ESCROW HOLDER IN CONNECTION WITH THIS TRANSACTION AND IS NOT ACTING AS A TRUSTEE OR IN ANY OTHER FIDUCIARY CAPACITY. EQUITY'S DUTIES SHALL BE LIMITED TO SAFEKEEPING OF SUCH MONEY AND DOCUMENTS RECEIVED BY IT AS ESCROW HOLDER, AND FOR THE DISPOSITION OF SUCH MONEY AND DOCUMENTS IN ACCORDANCE WITH THE WRITTEN INSTRUCTIONS ACCEPTED BY IT AS AN ESCROW HOLDER.

ALL FUNDS RECEIVED BY EQUITY AS ESCROW HOLDER SHALL BE DEPOSITED TO AN ACCOUNT (THE "ESCROW ACCOUNT") WITH A STATE OR FEDERAL BANK (THE "DEPOSITORY"). EQUITY MAY ALSO DEPOSIT ESCROW FUNDS FOR OTHER CUSTOMERS FOR UNRELATED TRANSACTIONS TO THE ESCROW ACCOUNT.

**UNLESS OTHERWISE AGREED IN WRITING, EACH OF THE PRINCIPALS AGREES, UNDERSTANDS AND ACKNOWLEDGES THAT: THE ESCROW ACCOUNT IS NON-INTEREST-BEARING; NO FINANCIAL OR OTHER BENEFITS WILL BE EARNED BY OR PROVIDED TO ANY OF THE PRINCIPALS WITH RESPECT TO SUCH FUNDS; AND EQUITY AND ITS AFFILIATES MAY INSTEAD RECEIVE DIRECT AND INDIRECT FINANCIAL AND OTHER BENEFITS FROM THE DEPOSITORY WITH RESPECT TO SUCH FUNDS. THESE BENEFITS SHALL BE TREATED AS ADDITIONAL COMPENSATION TO EQUITY FOR ITS SERVICES AS AN ESCROW HOLDER IN THIS TRANSACTION.**

ONLY CASH OR WIRED FUNDS CAN BE GIVEN IMMEDIATE AVAILABILITY UPON DEPOSIT.

ORDER NO.: SD0570915

ALL OTHER FUNDS SUCH AS PERSONAL, CORPORATE OR PARTNERSHIP CHECKS AND
DRAFTS MAY CAUSE MATERIAL DELAYS IN DISBURSEMENT OF FUNDS ON THIS ORDER.

IN ORDER TO AVOID DELAYS, ALL FUNDS SHOULD BE WIRE TRANSFERRED. OUTGOING WIRE
TRANSFERS WILL NOT BE AUTHORIZED UNTIL CONFIRMATION OF THE RESPECTIVE
INCOMING WIRE TRANSFER OR AVAILABILITY OF DEPOSITED CHECKS.

**NOTE NO. 5:** THIS COMPANY REQUIRES CURRENT BENEFICIARY DEMAND PRIOR TO
CLOSING. IF THE DEMAND IS EXPIRED AND A CURRENT DEMAND CANNOT BE OBTAINED, OUR
REQUIREMENTS ARE AS FOLLOWS:

- A.  IF THIS COMPANY ACCEPTS A VERBAL UPDATE ON THE DEMAND, WE WILL HOLD
     AN AMOUNT NOT LESS THAN ONE MONTHLY MORTGAGE PAYMENT PLUS
     APPLICABLE LATE CHARGES.  THIS HOLD WILL BE IN ADDITION TO ANY HOLD
     THE LENDER MAY HAVE STIPULATED.

- B.  IF THIS COMPANY CANNOT OBTAIN A VERBAL UPDATE ON THE DEMAND, WE
     WILL HOLD TOTAL PROCEEDS UNTIL A CURRENT DEMAND IS RECEIVED.
     ESCROW HOLDER SHALL REMAIN RESPONSIBLE FOR OBTAINING AND
     SUBMITTING A CURRENT STATEMENT.

**NOTE:** IF YOU INTEND TO WIRE FUNDS TO EQUITY TITLE COMPANY, PLEASE **CALL OUR
OFFICE** AND SEND THE FUNDS TO:

COMERICA BANK
2015 MANHATTAN BEACH
REDONDO BEACH, CA  90278

EQUITY TITLE COMPANY SAN DIEGO TRUST ACCOUNT **#1891614867**
ABA ROUTING **#121137522**

PLEASE REFERENCE OUR ORDER NUMBER AND THE TITLE OFFICER'S NAME.

NA/RM

7

Title Officer: 04  Order: SD0570915  Comment:

Americo Appraisal
Real Estate Appraisal

N/A
File No. CaminitoEastBluff3303

APPRAISAL OF



Single Family Residence

LOCATED AT:

3303 Caminito Eastbluff
La Jolla, CA 92037

FOR:

Jiagnyu Zhu
3303 Caminito Eastbluff, Unit 176
La Jolla, CA 92037

BORROWER:

Jiangyu Zhu

AS OF:

November 4, 2005

BY:

Charles G. Fox

N/A

# Individual Condominium Unit Appraisal Report   File No. CaminitoEastBluff33C

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 3303 Caminito Eastbluff | Unit # 176 | City La Jolla | State CA | Zip Code 92037 |
|---|---|---|---|---|

Borrower Jiangyu Zhu   Owner of Public Record Zhu, Jiangyu Kimbara, Kayoko   County San Diego

Legal Description Par 2, Us 176, Doc 77-080623, Tract 1005576

| Assessor's Parcel # 346-801-30-14 | Tax Year 04/05 | R.E. Taxes $ 3,572.80 |
|---|---|---|

| Project Name Eastbluff Phase IV | Phase # 1 | Map Reference 1228/A4 | Census Tract 83.15 |
|---|---|---|---|

Occupant [X] Owner [ ] Tenant [ ] Vacant   Special Assessments $ None   HOA $ 215.00 [ ] per year [X] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe)

Lender/Client Jiangyu Zhu   Address 3303 Caminito Eastbluff, Unit 176, La Jolla, CA 92037

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). NDC public record

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
Refi

Contract Price $ 525,000   Date of Contract N/A   Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid. $ Refinance

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | | [ ] Increasing [X] Stable [ ] Declining | | | PRICE | AGE | One-Unit 70% % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Property Values | Shortage [X] In Balance [ ] Over Supply | Demand/Supply | $(000) | (yrs) | 2-4 Unit 5% % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | | | Low | | Multi-Family 10% % |
| Neighborhood Boundaries | Bounded to the North by La Jolla Village Drive, to the East by Hwy 5, to | | | | | | High | | Commercial 5% % |
| the South by Soledad Park and to the West by Pacific Ocean. | | | | | | | Pred. | | Other Vacant 10% % |

Neighborhood Description The subject property is located in La Jolla an established area of San Diego. The subject has a good market appeal and close proximity to public transportation, schools, shopping and freeway access. It is close to employment centers and the employment stability of the area appears to be good.

Market Conditions (including support for the above conclusions) See Attached Addendum.

Topography   Size   Density   View Area

Specific Zoning Classification R1   Zoning Description Single Family Residence

Zoning Compliance [X] Legal [ ] Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? [ ] Yes [ ] No
[ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | | Public | Other (describe) | | Off-site Improvements—Type | | Public | Private |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | | Water | | | Street | Asphalt | | [X] | |
| Gas | [X] | | | Sanitary Sewer | [X] | | Alley | None | | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 060295 / 1601 F   FEMA Map Date 6/19/1997

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe.

Data source(s) for project information

Project Description [ ] Detached [ ] Row or Townhouse [ ] Garden [ ] Mid-Rise [ ] High-Rise [ ] Other(describe)

| General Description | | General Description | | Subject Phase | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories Three | | Exterior Walls Stucco | | # of Units | 212 | # of Phases | 1 | # of Planned Phases | N/A |
| # of Elevators N/A | | Roof Surface comp shngl | | # of Units Completed | 212 | # of Units | 212 | # of Planned Units | N/A |
| [X] Existing [ ] Proposed | | Total # Parking 460 +/- | | # of Units For Sale | 11 | # of Units for Sale | 11 | # of Units for Sale | N/A |
| [ ] Under Construction | | Ratio (spaces/units) 2/1 | | # of Units Sold | 212 | # of Units Sold | 212 | # of Units Sold | N/A |
| Year Built 1978 | | Type Open | | # of Units Rented | 80% | # of Units Rented | 80% | # of Units Rented | N/A |
| Effective Age 27 Yrs. | | Guest Parking Yes | | # of Owner Occupied Units | 20% | # of Owner Occupied Units | 20% | # of Owner Occupied Units | N/A |

Project Primary Occupancy [X] Principal Residence [ ] Second Home or Recreational [ ] Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [ ] No

Management Group – [ ] Homeowners' Association [ ] Developer [X] Management Agent – Provide name of management company   See Attached Addendum

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? [ ] Yes [X] No   If Yes, describe

Was the project created by the conversion of an existing building(s) into a condominium? [ ] Yes [X] No   If Yes, describe the original use and the date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? [X] Yes [ ] No   If No, describe

Is there any commercial space in the project? [ ] Yes [X] No   If Yes, describe and indicate the overall percentage of the commercial space.

N/A

## Individual Condominium Unit Appraisal Report

File No. CaminitoEastBluff330

Describe the condition of the project and quality of construction.    The project appears to be in average to good condition.

Describe the common elements and recreational facilities.    Common areas include landscape upkeep and community pool and spa.

Are any common elements leased to or by the Homeowners' Association?    ☐ Yes  ☒ No    If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    ☐ Yes  ☒ No  If Yes, $ _____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    ☒ Yes  ☐ No    If No, describe and comment on the effect on value and marketability.

I  ☒ did  ☐ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    ☐ Yes  ☒ No    If Yes, report the monthly facility charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears  ☐ High  ☒ Average  ☐ Low    If High or Low, describe.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes  ☒ No  If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 176.00    per month X 12 = $ 2,112.00    per year    Annual assessment charge per year per square feet of gross living area = $ 1.46
Utilities included in the unit monthly assessment  ☐ None  ☐ Heat  ☐ Air Conditioning  ☐ Electricity  ☐ Gas  ☐ Water  ☒ Sewer  ☐ Cable  ☐ Other (describe)

| GENERAL DESCRIPTION | INTERIOR | materials/condition | AMENITIES | | Appliances | CAR STORAGE |
|---|---|---|---|---|---|---|
| Floor # 1 | Floors Cpt/Ct/Avg | | ☒ Fireplace(s) # 1 | | ☒ Refrigerator | None |
| # of Levels 2 | Walls Drywall/Avg | | Woodstove(s) # | | ☒ Range/Oven | ☒ Garage  Covered  Open |
| Heating Type Fau  Fuel Elec | Trim/Finish Stain/Avg | | Deck/Patio | | ☒ Disp  ☒ Microwave | # of Cars 2 |
| ☒ Central AC  individual AC | Bath Wainscot CT/FG/Avg | | Porch/Balcony | | ☒ Dishwasher | Assigned  ☒ Owned |
| Other (describe) | Doors Int wood HC/Avg | | ☒ Other Balcony | | ☒ Washer/Dryer | Parking Space # 176 |
| Finished area above grade contains: | 6 Rooms | | 2 Bedrooms | 2.5 Bath(s) | 1,458 Square Feet of Gross Living Area Above Grade | |

Are the heating and cooling for the individual units separately metered?  ☐ Yes  ☐ No    If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.).  The Subject has no special energy efficient items. This is common for the area and does not negatively affect marketability.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The subject appears to be in good condition and reflects typical age life depreciation. No repairs or modernization needed at time of inspection. No functional or external inadequacies were observed that would have a negative affect on marketability.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  ☒ No  If Yes, describe
None noted at the time of inspection

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes  ☐ No    If No, describe.

I  ☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  ☒ did  ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  NDC/MLS/Public Record
My research  ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  NDC/MLS/Public Record
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/14/2004 | No prior sales | No prior sales | No prior sales |
| Price of Prior Sale/Transfer | $525,000 | in last 12 months | in last 12 months | in last 12 months |
| Data Source(s) | NDC-Doc# 1175933 | | | |
| Effective Date of Data Source(s) | | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    None found unless noted above.

N/A

## Individual Condominium Unit Appraisal Report

File No. CaminitoEastBluff330

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| There are 25 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 600,000 to $ 690,000 | | | | |
| There are 9 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 615,000 to $ 665,000 | | | | |
| Address and Unit # | 3303 Caminito Eastbluff 176 | 3252 Caminito Ameca | 3221 Via Marin | 8276 Caminito Modena |
| Project Name and Phase | Eastbluff 1 | | | |
| Proximity to Subject | | 1.61 miles ENE | 1.67 miles NE | 1.68 miles ENE |
| Sale Price | $ 525,000 | $ 649,500 | $ 620,000 | $ 632,000 |
| Sale Price/Gross Liv. Area | $ 360.08 sq. ft. | $ 438.85 sq. ft. | $ 418.92 sq. ft. | $ 446.33 sq. ft. |
| Data Source(s) | Inspection | MLS#056035038/Doc# 817935 | MLS#056021807/Doc# 433717 | MLS#051021353/Doc# 403090 |
| Verification Source(s) | NDC Data | APN# 346-801-07-54 | APN# 346-801-07-69 | APN# 346-801-27-34 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION  +(-) $ Adjustment | DESCRIPTION  +(-) $ Adjustment | DESCRIPTION  +(-) $ Adjustment |
| Sale or Financing Concessions | Refinance None Known | Conventional None Known | Conventional None Known | Conventional None Known |
| Date of Sale/Time | N/A | 09/21/2005 | 05/23/2005 | 05/12/2005 |
| Location | Good | Similar | Similar | Similar |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| HOA Mo. Assessment | $176.00 | Similar | Similar | Similar |
| Common Elements and Rec. Facilities | Common area Pool,Spa,Clubhs | Common area Pool,Spa,Clubhs | Common area Pool,Spa,Clubhs | Common area Pool,Spa,Clubhs |
| Floor Location | 1 | 1 | 1 | 1 |
| View | Area | Similar | Similar | Similar |
| Design (Style) | Convtl/Good | Similar/Similar | Similar/Similar | Similar/Similar |
| Quality of Construction | Good | Similar | Similar | Similar |
| Actual Age | 27+/- Years | 31 Yrs. | 31 Yrs. | 27 Yrs. |
| Condition | Good | Similar | Similar | Similar |
| Above Grade Room Count | Total 6 / Bdrms 2 / Baths 2.5 | Total 6 / Bdrms 3 / Baths 2.5 | Total 6 / Bdrms 3 / Baths 2.5 | Total 6 / Bdrms 3 / Baths 2.5 |
| Gross Living Area | 1,458 sq. ft. | 1,480 sq. ft.  0 | 1,480 sq. ft.  0 | 1,416 sq. ft.  0 |
| Basement & Finished Rooms Below Grade | None None | Similar Similar | Similar Similar | Similar Similar |
| Functional Utility | Average | Similar | Similar | Similar |
| Heating/Cooling | Fau Elec,C/Air | FAU / N/K | FAU / None | FAU / N/K |
| Energy Efficient Items | None | None | None | None |
| Garage/Carport | Garage | 2 Att. Garage | 2 Att. Garage | 2 Att. Garage |
| Porch/Patio/Deck | Balcony | Balcony | Patio/Enclosed | Patio |
| Fireplace | 1 F/P | 1 Fireplace | 1 Fireplace | 1 Fireplace |
| Fence/Pool | Fence,Pool,Balcon | Community | Community | Community |
| Net Adjustment (Total) | | [X] + [ ] - $ 0 | [X] + [ ] - $ 0 | [X] + [ ] - $ 0 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.0% % Gross Adj. 0.0% % $ 649,500 | Net Adj. 0.0% % Gross Adj. 0.0% % $ 620,000 | Net Adj. 0.0% % Gross Adj. 0.0% % $ 632,000 |

Summary of Sales Comparison Approach  See Attached Addendum.

Indicated Value by Sales Comparison Approach $ 630,000                N/A

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ N/A  = $ _____ N/A  Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM) N/A

Indicated Value by: Sales Comparison Approach $ 630,000                Income Approach (if developed) $ N/A

See Attached Addendum.

### RECONCILIATION

This appraisal is made  [X] "as is,"  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  See Attached Addendum.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 630,000 as of 11/4/2005, which is the date of inspection and the effective date of this appraisal.

GOLDEN STATE APPRAISALS, INC.

N/A

## Individual Condominium Unit Appraisal Report
File No. CaminitoEastBluff330

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

N/A

## Individual Condominium Unit Appraisal Report   File No  CaminitoEastBluff33C

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.  I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.  I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.  I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.  I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.  I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.  I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.  I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.  I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.  I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

N/A

## Individual Condominium Unit Appraisal Report

File No. CaminitoEastBluff330

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1.   I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.   I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.   The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.   This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.   If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Charles Fox_ | Signature _____ |
| Name Charles G. Fox | Name _____ |
| Company Name Americo Appraisal | Company Name _____ |
| Company Address 10201 Mission Gorge Road, Suite I, Santee, CA. 92071 | Company Address _____ |
| Telephone Number 610-449-1284 | Telephone Number _____ |
| Email Address americoappraisal@earthlink.net | Email Address _____ |
| Date of Signature and Report 11/07/2005 | Date of Signature _____ |
| Effective Date of Appraisal 11/4/2005 | State Certification # _____ |
| State Certification # N/A | or State License # _____ |
| or State License # AL033948 | State _____ |
| or Other (describe) N/A        State # N/A | Expiration Date of Certification or License _____ |
| State CA | |
| Expiration Date of Certification or License 5/6/2006 | |
| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
| 3303 Caminito Eastbluff | ☐ Did not inspect subject property |
| La Jolla, CA  92037 | ☐ Did inspect exterior of subject property from street |
|  | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 630,000 | ☐ Did inspect interior and exterior of subject property |
|  | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name _____ | COMPARABLE SALES |
| Company Name Jiagnyu Zhu | ☐ Did not inspect exterior of comparable sales from street |
| Company Address 3303 Caminito Eastbluff, Unit 176 | ☐ Did inspect exterior of comparable sales from street |
| La Jolla, CA 92037 | Date of Inspection _____ |
| Email Address _____ | |

GOLDEN STATE APPRAISALS, INC.

**ADDENDUM**

| Borrower: Jiangyu Zhu | | File No.: CaminitoEastBluff3303no176cgfCONDO |
|---|---|---|
| Property Address: 3303 Caminito Eastbluff | | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | | |

**Neighborhood Market Conditions**
Property values in this neighborhood tend to reflect an increasing market. Demand is greater than supply. Multiple offers with the sales price exceeding the listed price are common. Conventional financing is prevalent in the current market place. According to current market data properties in this neighborhood have a 1-3 month marketing time when listed within 7% to 9% of the market.

**Management Agent's Name**
We are unable to vewrify if any pending litigation is within the complex as Debra with the management company replies that they do not relase that information. Walters Management Company phone number 858-576-5566.

**Comments on Sales Comparison**
All comparables were given equal consideration in the final estimate of value. All comps are within the market area of the subject and would be considered by prospective purchasers.

No adjustments all comparables similar to the subject in areas of age, bathroom count and GLA.

Comparable 1 is closest to subject, similar in most recent sale, bathroom count and GLA.

Comparable 2 is similar to subject in bathroom count, GLA, garage space and fireplace count.

Comparable 3 is similar to subject in age, bathroom count, GLA, garage space and fireplace count.

No Adjustments.

All comparables given equal weight.

**Final Reconciliation**
The purpose of this appraisal is to determine market value of the subject property.

No personal property was given any consideration in the determination of value in this appraisal.

Appraiser uses various information sources regarding subject and comparables to effect data collection and analysis for this report. Sources may include, but are not limited to: Multiple Listing Service, National Data Collective, Fastweb, DataQuick, County Assessor / Public Records, etc. Occasionally photos provided by the Multiple Listing Service will be used for comparable sales when they will more accurately represent the subject condition and appearance at the time of sale.

**Conditions of Appraisal**
No Conditions

All comparables were confirmed closed. This was verified by a search of the county records, AIRD, NDC data, title companies. The MLS was used for additional information and in some cases comparable photos.

This appraisal has been digitally signed and converted to a portable document format. This portable document format may be printed by the client / intended user(s) identified in this report and as such should be considered / is equivalent to a signed original. No other use of this appraisal is authorized without prior written permission from Americo Appraisal.

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: Jiangyu Zhu | | File No.: CaminitoEastBluff3303no176cgfl |
| Property Address: 3303 Caminito Eastbluff | | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: November 4, 2005
Appraised Value: $ 630,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

Subject Inside Photos

| Borrower: Jiangyu Zhu | | File No.: CaminitoEastBluff3303no176cgf( |
|---|---|---|
| Property Address: 3303 Caminito Eastbluff | | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | | |



Subject Kitchen



Subject Family Room



Subject Bathroom

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Jiangyu Zhu | | File No.: CaminitoEastBluff3303no176cgf0 |
|---|---|---|
| Property Address: 3303 Caminito Eastbluff | | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | | |



COMPARABLE SALE #1

3252 Caminito Ameca
La Jolla, CA. 92037
Sale Date: 09/21/2005
Sale Price: $ 649,500



COMPARABLE SALE #2

3221 Via Marin
La Jolla, CA. 92037
Sale Date: 05/23/2005
Sale Price: $ 620,000



COMPARABLE SALE #3

8276 Caminito Modena
La Jolla, CA. 92037
Sale Date: 05/12/2005
Sale Price: $ 632,000

PLAT MAP

| | |
|---|---|
| Borrower: Jiangyu Zhu | File No.: CaminitoEastBluff3303no176cgft |
| Property Address: 3303 Caminito Eastbluff | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | |



LOCATION MAP

| Borrower: Jiangyu Zhu | File No.:   CaminitoEastBluff3303no176cgft |
|---|---|
| Property Address: 3303 Caminito Eastbluff | Case No.: N/A |
| City: La Jolla | State: CA | Zip: 92037 |
| Lender: Jiagnyu Zhu | |

