UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 05-10153-GAO |
| JIANGYO ZHU and KAYOKO KIMBARA | ) ) ) ) | |
| Defendants | ) ) | |

**PRETRIAL DIVERSION AGREEMENT**

The United States Department of Justice and the United States Attorney's Office for the District of Massachusetts (hereafter together "the Government"), and Jiangyu Zhu ("Dr. Zhu") and Kayoko Kimbara ("Dr. Kimbara") enter into this written Pretrial Diversion Agreement (the "Agreement").

Background

1. On June 17, 2002, the Government filed a Criminal Complaint (the "Complaint") against Dr. Zhu and Dr. Kimbara, in the United States District Court for the District of Massachusetts entitled <u>United States v. Zhu, et al.</u>, Case No. 02-M-0421-RBC, charging, among other things, that Dr. Zhu and Dr. Kimbara did transport from Massachusetts to Texas goods of a value exceeding $5,000, knowing that such goods were converted from Harvard, in violation of 18 U.S.C. § 2314. As set forth in greater detail in Exhibit A to this Agreement, the property consisted, <u>inter alia</u>, of certain documents and genetic research materials that Drs. Zhu and Kimbara had taken from a Harvard University laboratory at which they had been employed.

1

2. On June 27, 2002, the District Court released Dr. Zhu and Dr. Kimbara on bail under specified terms and conditions, which included electronic monitoring and a curfew.

3. On June 16, 2005, following various extension and tolling agreements entered into by the parties, the Grand Jury returned an Indictment against Dr. Zhu and Dr. Kimbara in United States District Court for the District of Massachusetts captioned <u>United States v. Zhu, et al.</u>, Criminal No. 05-10153-GAO, charging the defendants with having transported from Massachusetts to Texas goods of a value exceeding $5,000, knowing that such goods were converted from Harvard, in violation of 18 U.S.C. § 2314 (the "Indictment"). Dr. Zhu and Dr. Kimbara were arraigned on the Indictment on July 11, 2005.

<u>Terms and Conditions</u>

4. In light of the nearly three years that Dr. Zhu and Dr. Kimbara already have been subject to electronic monitoring and a curfew, together with their willingness to: (a) acknowledge responsibility for their conduct; and (b) comport their future conduct with the law, the Government has determined that the interests of justice will best be served by entry into this Agreement on the following terms and conditions:

5. Dr. Zhu and Dr. Kimbara acknowledge, stipulate to the accuracy of, and accept responsibility for the conduct set forth in the Agreed Statement of Facts attached hereto as Exhibit A, which is incorporated by reference into this Agreement. Dr. Zhu and Dr. Kimbara agree that they will not contest the admissibility into evidence of Exhibit A in any subsequent criminal proceedings occurring in the event of a breach of this Agreement.

6. Dr. Zhu and Dr. Kimbara agree that they shall not individually, jointly, through

present or future attorneys, or through present or future representatives or agents, make any statement contradicting any statement of fact contained in Exhibit A.  Any such contradictory statement shall constitute a breach of this Agreement, and Dr. Zhu and Dr. Kimbara thereafter will be subject to prosecution pursuant to the terms of this Agreement.

7. The Government agrees to recommend to the Court that prosecution of Dr. Zhu and Dr. Kimbara on the Indictment referenced in paragraph 3 be deferred for a period of twelve months (hereafter, the "Diversion Period"), provided that Dr. Zhu and Dr. Kimbara comply with the terms and conditions of this Agreement.

8. During the Diversion Period, Dr. Zhu and Dr. Kimbara shall not violate any federal, state, or local law and, through their counsel, shall notify the Government within 72 hours should they be arrested in connection with any offense other than a traffic infraction.  Such notice shall be provided in writing to Assistant United States Attorney Michael J. Pineault, U.S. Attorney's Office, U.S. Courthouse, Suite 9200, 1 Courthouse Way, Boston, MA 02201.

9. The Government agrees that if Dr. Zhu and Dr. Kimbara are in full compliance with all of their obligations under this Agreement, the Government shall, within thirty days of the expiration of the Diversion Period, seek dismissal of the Indictment with prejudice.

10. It is understood that should the Government, in its sole discretion, determine that Dr. Zhu and/or Dr. Kimbara have violated any provision of this Agreement, then the Agreement shall become null and void and the Government may thereafter institute criminal prosecution against the person violating the Agreement for the offense alleged in the Indictment.

11. Dr. Zhu and Dr. Kimbara hereby knowingly and willingly toll the statute of

limitations and waive their rights to a speedy trial for the offenses charged in the Indictment during the period of time this Agreement is in effect. Dr. Zhu and Dr. Kimbara each hereby certifies the he/she is aware of the fact that the Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, and that Rule 48(b) of the Federal Rules of Criminal Procedure provides that the Court may dismiss an indictment, information, or complaint for unnecessary delay in presenting a charge to the Grand Jury, filing an information, or in bringing a defendant to trial; that he/she requests the Government to defer such prosecution; that he/she agrees and consents that any delay from the date of this Agreement through the Diversion Period shall be deemed to be a necessary delay at his/her request and excluded from computation under the Speedy Trial Act; and that he/she waives any defense to such prosecution on the ground that such delay during the Diversion Period operated to deny his/her rights under Rule 48(b) of the Federal Rules of Criminal Procedure, Title 18, United States Code, Section 3161, and the Sixth Amendment to the Constitution of the United States to a speedy trial or to bar the prosecution by reasons of the running of the statute of limitations for the Diversion Period.

     12.     This Agreement shall remain in effect for a period of twelve months from the date of its full execution.

     13.     It is understood and agreed by all parties that this Agreement shall be publicly filed in the United States District Court for the District of Massachusetts upon its full execution.

     14.     This Agreement contains the complete agreement between the parties. No promises, representations or agreements have been made other than those set forth in this

Agreement. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement may not be modified except in writing signed by all the parties.

15. This Agreement may be executed in counterparts.

**On Behalf of the Government**

Dated: April 12, 2006

By

MICHAEL J. SULLIVAN
United States Attorney

Michael J. Pineault
Assistant United States Attorney

Dated: April __, 2006

By

UNITED STATES DEPARTMENT OF JUSTICE

Robert E. Wallace, Jr.
Senior Trial Attorney

**On Behalf of the Defendants**

I hereby state and affirm that I have read this Agreement and understand its contents. I agree that I will comply with the Terms and Conditions stated herein.

Dated: April 12, 2006

                                              Jiangyu Zhu

I hereby state and affirm that I have read this Agreement and understand its contents. I agree that I will comply with the Terms and Conditions stated herein.

Dated: April 12, 2006

                                              Kayoko Kimbara

I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands the terms of this Agreement and all the rights that he is giving up by entering into this Agreement, and based on the information now known to me, his decision to enter into this Agreement is knowing and voluntary.

Dated: April 12, 2006

By                                  
Miriam Conrad.
Attorney for Jiangyu Zhu

I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands the terms of this Agreement and all the rights that she is giving up by entering into this Agreement, and based on the information now known to me, her decision to enter into this Agreement is knowing and voluntary.

Dated: April 12, 2006

                                   MORRISON & FOERSTER LLP

By                                  
Dan Marmalefsky
Attorney for Kayoko Kimbara

**EXHIBIT A**

**AGREED STATEMENT OF FACTS**

1.   Harvard University is an academic institution located primarily in Cambridge, Massachusetts. The Harvard Medical School's Department of Cell Biology ("Harvard"), through university-affiliated laboratories located in Boston, Massachusetts, engages in various research projects.

2.   Between February 27, 1997 and December 31, 1999, Dr. Jiangyu Zhu ("Dr. Zhu") was employed as a research fellow in a cell biology laboratory associated with the Harvard Medical School. Between October 1, 1998 and December 31, 1999, Dr. Kayoko Kimbara ("Dr. Kimbara") was employed as a research fellow in the same laboratory (hereafter, the "Harvard laboratory").

3.   In December 1999, Dr. Zhu was offered and accepted a position to establish a research laboratory and to act as an Assistant Professor in the Department of Molecular Medicine at the University of Texas Health Science Center at San Antonio, Texas ("University of Texas"). Dr. Zhu's position at the University of Texas was scheduled to commence on or about January 15, 2000.

4.   After accepting the position at the University of Texas, Dr. Zhu made arrangements with the University of Texas to transport genetic research materials by private interstate carrier from Massachusetts to Texas for use in Dr. Zhu's new laboratory. Dr. Zhu did not notify Harvard of the arrangements he had made with the University of Texas or seek permission to remove or ship research materials belonging to Harvard from the Harvard laboratory.

**EXHIBIT A**

5.   Between December 27, 1999 and January 1, 2000, Dr. Zhu and Dr. Kimbara removed at least twenty cartons of materials, including research materials (hereafter, the "materials"), from the Harvard laboratory. As reflected on surveillance tapes maintained by Harvard, Dr. Zhu and Dr. Kimbara removed the materials at or about the following times on the following dates: (a) 5:41 a.m. on December 27, 1999; (b) 7:18 p.m. and 7:47 p.m. on December 28, 1999; (d) 5:34 a.m. on December 30, 1999; (d) 6:43 a.m. on December 31, 1999; and (e) 5:58 a.m. on January 1, 2000. The materials included data and various biologicals, including monoclonal antibodies, cDNAs, small molecules from screens, and cell lines relating to: (a) research that Dr. Zhu and Dr. Kimbara were conducting; and (b) research that others were conducting. Many of the materials were not commercially available, had been developed in and belonged to the Harvard laboratory, and related to ongoing research projects being performed in the Harvard laboratory. The value of the materials that belonged to the Harvard laboratory and that were taken by Dr. Zhu and Dr. Kimbara without Harvard's knowledge, authorization, or permission exceeded $5,000.

6.   Pursuant to the arrangements made by Dr. Zhu, as described in paragraph 4, above, the materials were shipped from Massachusetts to Texas by private interstate carrier between approximately December 28, 1999 and January 2, 2000. At that time, Dr. Zhu had not disclosed to the supervising faculty in the Harvard laboratory his acceptance of a position at the University of Texas.

7.   Dr. Zhu and Dr. Kimbara have asserted that it is customary for post-doctoral fellows to take some research materials with them when moving to a new university. However,

**EXHIBIT A**

Dr. Zhu and Dr. Kimbara knew that the nature and quantity of the materials that they removed from the Harvard laboratory exceeded that which would have been customary for a post-doctoral fellow to take to a new post; they knew that they did not have permission from Harvard to remove such materials (e.g., materials in excess of what post-doctoral fellows might customarily take); they knew that such permission was needed given the nature and quantity of what they were taking; and they acted intentionally in removing the materials anyway. Through the foregoing actions, Dr. Zhu and Dr. Kimbara did knowingly and willfully transport from Massachusetts to Texas goods of a value exceeding $5,000, knowing that such goods were converted from Harvard.

8. Harvard learned of the removal of the materials when other researchers returned to the Harvard laboratory following the New Year's holiday and discovered that the materials had been taken. A subsequent review of security tapes revealed that Dr. Zhu and Dr. Kimbara had removed the above-referenced materials during the dates and times listed in paragraph 5, above.

9. On or about January 11, 2000, representatives from Harvard questioned Dr. Zhu and Dr. Kimbara concerning the materials that had been taken. During that meeting, Dr. Zhu falsely stated that he had not removed any reagents and that nothing had been removed from the Harvard laboratory.

10. Subsequent to Dr. Zhu's and Dr. Kimbara's removal of materials from the Harvard laboratory, Harvard discovered that materials they had left behind were not labeled, organized, or maintained in such a manner as to enable Harvard to ascertain what remained.

**EXHIBIT A**

11. In or about June, 2000, representatives from Harvard University, acting with the consent of the University of Texas, located in Dr. Zhu's Texas laboratory materials that Dr. Zhu and Dr. Kimbara had removed and transported from the Harvard laboratory. Those materials included over 1,300 biologicals, which subsequently were returned from Texas to Harvard.